IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1074

Filed 5 August 2026

Sampson County, No. 24CVS000639-810

RENE LIMAGE, Plaintiff,

v.

COVINGTON & SHAW, LLC; DWIGHT MILLER; and, TERRACE P. MILLER, Defendants.

Appeal by plaintiff from order entered 1 July 2025 by Judge S. Thomas Currin II in Superior Court, Sampson County. Heard in the Court of Appeals 23 April 2026.

*The Griffin Law Firm, by Gregory T. Griffin, for plaintiff-appellant.*

*No brief filed for defendant-appellee.*

STROUD, Judge.

Plaintiff Rene Limage and his attorney Gregory Griffin appeal an order sanctioning both of them under Rule 11 of the North Carolina Rules of Civil Procedure. The sanctions arose from a single block quote in Limage's complaint. This opinion is no tutorial on writing style or the proper use of block quotes, although the facts here require us to say a word about both. Our main point is that judges rely on attorneys, as officers of the court, to present facts accurately and fairly. A trial judge should not have to take a block quote that purports to reproduce a contract provision verbatim, compare it to the fine print of that contract, and check whether the two

match. Yet that is what the trial court had to do here. It then gave Limage and attorney Griffin a chance to explain the discrepancy, but their explanations were not credible. The court addressed the Rule 11 violation carefully and properly, so we affirm.

## I.    Background

This appeal concerns a single order: the trial court's order imposing sanctions on Limage and attorney Griffin (collectively, Plaintiffs) under Rule 11. *See* N.C. Gen. Stat. § 1A-1, Rule 11 (2025) (Signing and verification of pleadings). This issue grew out of a series of discovery disputes with Defendants Covington and Shaw, LLC, a "real estate developer" engaged in the "construction of residences for sale," along with its members and owners, Dwight Miller and Terrace P. Miller, and a later hearing on Limage's summary judgment motion. But none of those substantive matters are before us. We set out only the claims and procedural history that bear on the one issue on appeal.

On 2 July 2024, Limage filed a complaint against Defendants over a contract to build him a house on an empty lot in Sampson County. His complaint asserted two claims, breach of contract and "fraud and Deceptive Trade practices" under Chapter 75 of the North Carolina General Statutes (UDTP)—and sought attorney's fees on both.

The breach-of-contract claim is the relevant one here. Limage alleged that he "entered into an agreement" with Defendants "to construct a home for him in the

amount of $210,900," under a contract he attached as Exhibit A.[1]  According to the

complaint, he paid "a [b]uilding [d]eposit in the amount of $25,000" when the parties

signed, then "another $25,000 and $10,000" later on.  Defendants, however, "failed

and refused to complete and convey" the property, "never returned" the $60,000

building deposit, and refunded only "$5,000 as a partial payment" of that sum.

Paragraph 34 of the complaint is what this appeal is about, so we quote this

allegation in full, with the original formatting and punctuation:

> 34. That as a result of the Defendants' failure to pay the Plaintiff, he has had to hire an attorney and incur legal fees and expenses and therefore the Defendants should be liable for the same pursuant to Paragraph 8 (n) of the Offer to Purchase and Contract which states:
>
> > If legal proceedings are brought by Buyer against Seller to recover a refund to Buyer and Seller shall reimburse to Buyer the reasonable costs actually incurred by Buyer, . . . the prevailing party in the proceeding shall be entitled to recover from the non-prevailing party reasonable attorney fees and court costs incurred in connection with the proceeding.

Paragraph 8(n) of the contract—entitled "Seller's Failure to Comply or Breach" and

located on page nine of the fourteen-page document—provides:

> (n) Seller's Failure to Comply or Breach: If Seller fails to

---

[1] The contract—titled "Offer to Purchase and Contract"—is a fourteen-page standard form contract "jointly approved" by the North Carolina Bar Association and the North Carolina Association of REALTORS®, Inc.  It lists a purchase price of $210,900 and a "Building Deposit" of $50,900, the latter with three handwritten installments beside it: "$25,000 09/12/2022"; "$12,950 11/15/2022"; and "$12,950 12/15/2022."  The remaining $160,000 was to be paid "in cash at [s]ettlement."  The complaint, however, alleges three building-deposit payments totaling $60,000—two of $25,000 and a later $10,000 described as an additional sum to help complete the project.  The contract also references an "[e]arnest [m]oney [d]eposit" and a "[d]ue [d]iligence [f]ee," but Limage paid only a "building deposit."

materially comply with any of Seller's obligations under this Paragraph 8 or Seller materially breaches this Contract, and Buyer elects to terminate this Contract as a result of such failure or breach, then the Earnest Money Deposit and the Due Diligence Fee shall be refunded to Buyer and Seller shall reimburse to Buyer the reasonable costs actually incurred by Buyer in connection with Buyer's Due Diligence without affecting any other remedies. If legal proceedings are brought by Buyer against Seller to recover the Earnest Money Deposit, the Due Diligence Fee and/or the reasonable costs actually incurred by Buyer in connection with Buyer's Due Diligence, the prevailing party in the proceeding shall be entitled to recover from the non-prevailing party reasonable attorney fees and court costs incurred in connection with the proceeding.

Defendants filed an answer *pro se* on 9 September 2024. When they failed to respond properly to Limage's discovery requests, he filed a motion to compel, and on 12 February 2025, the trial court entered an "Order to Compel Defendants Responses to Plaintiff's Discovery Requests." On 14 May 2025, Limage filed two motions: one for sanctions and attorney's fees, and one for summary judgment. The summary judgment motion sought judgment on the breach-of-contract claim and UDTP claim, treble damages, and "reasonable legal fees of 15% ($24,750) plus court costs and the legal rate of interest from the date of filing until paid in full."

The trial court heard both motions on 27 May 2025. At the end of the hearing, it announced part of its ruling in open court—the part related to Limage's discovery sanctions motion—and took the rest under advisement. On 29 May 2025, it entered an order entitled: "Order for Discovery Sanctions"; "Order Granting/Denying in part Summary Judgment"; and "Order Directing Plaintiff and Plaintiff's Counsel to Show

Cause Why Sanctions Should Not Be Imposed" (show cause order). The court granted Limage's sanctions motion and struck Defendants' answer for failing to comply with an earlier order compelling discovery. It denied summary judgment on the UDTP claim but granted it on the breach-of-contract claim, entering judgment against Defendants "in the amount of $55,000, plus interest" and "costs."

The trial court denied Limage's request for attorney's fees under paragraph 8(n).[2] That provision, it explained, applies only to actions to recover the earnest money deposit, the due diligence fee, or costs incurred in connection with the buyer's (Limage's) due diligence—none of which was at issue here, where the dispute concerned "payment . . . for a '[b]uilding [d]eposit.'" The court then voiced its "extreme concern[ ]" that paragraph 34 "materially misquote[d] and misrepresent[ed] (and, in fact, just plain ma[de] up part of) the purportedly block-quoted text of [paragraph] 8(n)." Plaintiffs' edits, it found, "completely alter[ed] the purported meaning of [paragraph] 8(n) as it relate[d] to this case."

The trial court then directed Limage and attorney Griffin to show cause why they should not be sanctioned under Rule 11 for "misquoting" paragraph 8(n) in paragraph 34. Its order gave them ten days to file a sworn response addressing:

> a. why [c]omplaint [paragraph] 34, which purports to "block quote" [c]ontract [paragraph] 8(n), [wa]s

---

[2] The trial court reserved the issue of attorney's fees related to the discovery sanctions because attorney Griffin had submitted a single fee affidavit covering work on both the sanctions motion and the summary judgment motion, and the court could not separate the time attributable to each.

misquoted . . . ;

    b. how, in their view, the misquoting of [c]ontract [paragraph] 8(n) [wa]s not a material misrepresentation of the terms of [c]ontract [paragraph] 8(n); and,

    c. anything else [Limage] or [attorney Griffin] desire[d] the [c]ourt to consider in determining whether this misquoting was a material misrepresentation to the [c]ourt of the facts of this case.

On 6 June 2025, Plaintiffs filed their responses. Limage's affidavit was notarized but not sworn. In it, he discussed the underlying construction dispute and his general understanding of the matters before the court, but he never addressed the misquotation. Attorney Griffin signed his response, but contrary to the show cause order, he did not have it notarized or submit it under oath.[3] He offered several explanations for the misquotation: (1) that paragraph 34 was "not intended as a direct quote" but as a "paraphrase" of paragraph 8(n) supporting Limage's reading of that provision; (2) that paragraph 8(n), "when taken as a whole," reached any material contract breach—not just the deposits and fees it names; (3) that because the contract was attached to the complaint, it became "a part of the [c]omplaint," so "its express terms controlled" and no deception was possible; and (4) that the attorney's fees

---

[3] He also filed an amended "Affidavit of Attorney's Fees and Expenses" on the same date. That amended affidavit was notarized, with a notary certificate referring specifically to the "Affidavit of Attorney's Fees and Expenses" and not his show-cause response.

Limage sought on summary judgment were for the UDTP claim, making paragraph 8(n) of the contract immaterial to the relief actually sought.

On 1 July 2025, the trial court entered its fifteen-page order imposing Rule 11 sanctions (order or sanctions order). The court first addressed attorney Griffin's failure to submit his response under oath, as directed by the show cause order. It took "serious issue with the fact that [a]ttorney Griffin" had "his Amended Attorney's Fees Affidavit notarized . . . but did not have his [r]esponse submitted under oath." As a result, the court said that it would treat attorney Griffin's "failure to submit his [r]esponse under oath for what it [wa]s—his unwillingness to stand by the truthfulness and accuracy of his [r]esponse under oath."

The trial court then addressed the "[m]isquoting of [c]ontract [paragraph] 8(n) in [c]omplaint [paragraph] 34." It rejected each of the explanations in attorney Griffin's response. As to the first, the court found the "paraphrase" characterization not credible: paragraph 34 prefaced the quoted text with the words "which states," set it off as a block quote, and used ellipses—devices that, especially in combination, "are not credibly argued to be used when conveying a paraphrase." As for the second, it determined that Plaintiffs' reading of paragraph 8(n) was "directly rebutted" by the provision's "express language" and confirmed wrong by the "sheer breadth" of the alterations: had the provision genuinely covered any material breach, "no such edits would have been necessary and Plaintiff[s] could have relied on [paragraph 8(n)'s] actual wording." As to the third, the court stated that a party "may not include

deliberate falsehoods or misrepresentations in the body of the [c]omplaint and then cover that by burying the truth in 7¼ lines of fine print among 47 pages of attached exhibits." And as for the fourth, it observed that Rule 11 "deals with the signing of documents—not oral arguments advanced at a hearing," so what Limage sought at the hearing was "of no consequence"; and in any event, the summary judgment motion itself sought fees on both claims in the complaint. Having rejected each of Plaintiffs' explanations, it concluded that paragraph 34 contained "an intentional and material misrepresentation of the facts and of the content of the [c]ontract."

The trial court then turned to whether that conduct warranted Rule 11 sanctions. Applying the three-part inquiry—factual sufficiency, legal sufficiency, and improper purpose—it found a violation of the first prong: the misquotation was not "well grounded in fact" because the block quote's words differed materially from the contract's, and the discrepancy was intentional rather than a typographical error or a good-faith misunderstanding. *See Dodd v. Steele*, 114 N.C. App. 632, 635, 442 S.E.2d 363, 365 (1994) ("There are three parts to a Rule 11 analysis: (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose." (citation omitted)). It also found that Limage's verification of the complaint subjected him to Rule 11 too, because identifying whether a document is quoted accurately requires no specialized legal expertise.

In selecting an appropriate sanction, the trial court explained why the usual remedy—repayment of the opposing party's attorney's fees—was not available:

Defendants were proceeding *pro se* and had themselves disregarded the court's discovery orders, so dismissing or reducing Limage's recovery would let Defendants "escape judgment and accountability" for their own misconduct. The court fined attorney Griffin $1,500 and required him to complete six hours of ethics-qualifying continuing legal education by 31 December 2025, with a sworn affidavit of completion due 15 January 2026. It fined Limage $375.

Plaintiffs timely appealed the sanctions order.

## II. Jurisdiction

This appeal is interlocutory because the sanctions order "does not dispose of the case, but leaves it for further action by the trial court . . . to settle and determine the entire controversy." *Smith v. Lake Bay E., LLC*, 228 N.C. App. 72, 74, 743 S.E.2d 684, 686 (2013) (citation omitted). But this Court has held that an order imposing Rule 11 sanctions on counsel is immediately appealable as a final judgment. *Hummer v. Pulley, Watson, King & Lischer, P.A.*, 140 N.C. App. 270, 277, 536 S.E.2d 349, 353 (2000); *see also* N.C. Gen. Stat. § 7A-27(b)(1) (2025) ("[A]ppeal lies of right directly to the Court of Appeals . . . [f]rom any final judgment of a superior court . . . ."). We therefore have jurisdiction over this appeal.

## III. Analysis

Plaintiffs frame the issue on appeal as "[w]hether the trial court erred in imposing sanctions . . . where the misquoted contractual language identified *sua sponte* by the court was immaterial to the issues and arguments presented by the

parties." That framing embeds three distinct issues: (1) whether the trial court had authority to raise a potential Rule 11 violation *sua sponte*;[4] (2) whether paragraph 34 misrepresented the contract; and (3) whether any such misrepresentation was material.

We hold that the trial court had both explicit authority under Rule 11 and inherent authority as a court to raise the misquotation issue *sua sponte*, that paragraph 34 misrepresented paragraph 8(n), and that the misrepresentation was material.

## A. Relevant Law and Preliminary Observations

This Court reviews the trial court's imposition of Rule 11 sanctions *de novo*. *Couch v. Priv. Diagnostic Clinic*, 146 N.C. App. 658, 662, 554 S.E.2d 356, 360 (2001). If such sanctions "were proper," we review the "actual sanctions imposed under an abuse of discretion standard." *Id.* We also assess a trial court's act "in the exercise of its inherent authority" for an abuse of discretion. *Id.* at 663, 554 S.E.2d at 361.

Rule 11 provides, in relevant part:

> (a) Signing by Attorney.–Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. . . . The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after

---

[4] "*Sua sponte*" is a Latin term that means "of one's own accord; voluntarily" or "on its own motion." *Sua Sponte*, Black's Law Dictionary (12th ed. 2024).

reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of **litigation**. . . . *If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.*[5]

(b) Verification of pleadings by a party.–In any case in which verification of a pleading shall be required by these rules or by statute, it shall state in substance that the contents of the pleading verified are true to the knowledge of the person making the verification, except as to those matters stated on information and belief, and as to those matters he believes them to be true. Such verification shall be by affidavit of the party[ ] . . . .

N.C. R. Civ. P. 11(a), (b) (emphasis added). "There are three parts to a Rule 11 analysis: (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose. A violation of any one of these requirements mandates the imposition of sanctions under Rule 11." *Batlle v. Sabates*, 198 N.C. App. 407, 425, 681 S.E.2d 788, 800 (2009) (citation omitted).

---

[5] Plaintiffs block quote Rule 11(a) in their brief but (bafflingly) end it at "litigation," which we bold above. The italicized language is what they left out entirely. That matters because the excluded language basically decides one of the issues before us. We say more below; for now, it is enough to note that *this omission* in *this case* is disturbing.

Before turning to the merits, we note that Plaintiffs do not challenge any of the trial court's findings as unsupported by the evidence. The court did not separate its findings of fact from its conclusions of law, but many of its statements are findings of fact all the same. In passing, Plaintiffs assert that "[t]he trial court's order imposing sanctions . . . is based upon findings of fact unsupported by the evidence," yet they point to no unsupported facts. Those unchallenged findings are thus binding on appeal. *Static Control Components, Inc. v. Vogler*, 152 N.C. App. 599, 603, 568 S.E.2d 305, 308 (2002). We therefore review the trial court's imposition of sanctions *de novo* based on its findings of fact.

## B. Did the Trial Court Have Authority to Raise the Misquotation Issue *Sua Sponte*?

Plaintiffs argue that the trial court erred by "raising an issue unraised by the parties, and unrelated to the motions before it." In doing so, Plaintiffs contend, the court "ran afoul" of the Supreme Court's "recent admonition" in *Clark v. Sweeney* that "[i]n our adversarial system of adjudication, we follow the principle of party presentation. The parties frame the issues for decision, while the court serves as neutral arbiter of matters the parties present." 607 U.S. 7, 9 (2025) (*per curiam*) (internal quotation marks and citations omitted). But *Clark* is inapposite,[6] and the

---

[6] In *Clark*, the Fourth Circuit reversed the District Court's denial of *habeas* relief and ordered a new trial for a defendant convicted of "second-degree murder and several other crimes." 607 U.S. 7, 8 (2025) (*per curiam*). The defendant had sought *habeas* relief on one ground: ineffective assistance of counsel, because his attorney did not ask to *voir dire* the entire jury to ensure "no other juror was tainted by

trial court had authority under Rule 11 and inherent authority to raise the misquotation issue *sua sponte*.

Again, Rule 11 states in pertinent part:

> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion *or upon its own initiative*, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

N.C. R. Civ. P. 11(a) (emphasis added). The rule grants the trial court authority to raise a Rule 11 violation on "its own initiative." "*Sua sponte*," as noted earlier, is the legal, Latin term for "its own initiative." *See Sua Sponte*, Black's Law Dictionary (12th ed. 2024). And the word "shall" makes sanctions mandatory: once a violation is identified, the court "shall impose . . . an appropriate sanction." *Id.; see generally In re Cline*, 230 N.C. App. 11, 19, 749 S.E.2d 91, 97 (2013) ("The use of the word 'shall' in a statute is mandatory." (citation omitted)).

Rule 11 aside, the trial court also had inherent authority to address the

---

Juror 4's unauthorized crime-scene visit." *Id.* at 8–9. The District Court addressed only that claim and denied the petition. But the Fourth Circuit reversed on grounds the defendant had never asserted, "declar[ing] that [the defendant's] trial was marred by a 'combination of extraordinary failures from juror to judge to attorney' that deprived [him] of his right to be confronted with the witnesses against him and his right to trial by an impartial jury." *Id.* at 9. Because the State never had a chance to respond to those new grounds, the Supreme Court held that the Fourth Circuit's "radical transformation" of the claim "departed so drastically from the principle of party presentation as to constitute an abuse of discretion," and it reversed and remanded. *Id.* at 10 (citation omitted). Here, by contrast, the trial court acted under its own Rule 11 authority and gave Limage and attorney Griffin a full opportunity to respond before imposing any sanction.

misquotation. As this Court has explained: "All courts are vested with inherent authority to do all things that are reasonably necessary for the proper administration of justice," and that authority includes "inherent power to deal with its attorneys"—"[t]o prevent them from, or punish them for, committing acts of dishonesty or impropriety calculated to bring contempt upon the administration of justice." *Couch*, 146 N.C. App. at 665, 554 S.E.2d at 362 (citations omitted). Identifying a material misrepresentation in a verified complaint and giving counsel a chance to explain it fits comfortably within that authority.

One more point bears mention. In arguing that the trial court lacked authority to raise the misquotation issue *sua sponte*, attorney Griffin violated his duty of candor to *this* Court. Recall that Plaintiffs' brief block-quotes Rule 11(a)—but stops one sentence short. *See supra* note 5. The excluded sentence is the very language granting the court authority to act "upon its own initiative." N.C. R. Civ. P. 11(a).

That omission appears to breach an attorney's duty under the North Carolina Rules of Professional Conduct. Rule 3.3(a)(2) provides that an attorney "shall not knowingly: . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." N.C. R. Prof. Conduct 3.3(a)(2). A comment elaborates:

> Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition

> of the law, but must recognize the existence of pertinent legal authorities. Furthermore, as stated in paragraph (a)(2), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction that has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.

*Id.* at cmt. 4. We have invoked this duty before. *See T.H. v. SHL Health Two, Inc.*, 293 N.C. App. 462, 466 n.3, 900 S.E.2d 719, 723 n.3 (2024) (noting that the defendants "violated their duty of candor by not briefing" the Court on "clearly relevant caselaw" that the plaintiff had "thoroughly and persuasively" briefed). The omission here—excluding the one sentence of Rule 11 that resolves the very question Plaintiffs' argument raises—is serious. And it is more troubling still because this appeal itself concerns sanctions for a misquotation.

In their brief, Plaintiffs lament that the show cause order "left [them] stunned." We can relate. We, too, are stunned—not by the show cause order, but that attorney Griffin's quote of Rule 11 left out the one sentence that does not just weaken his argument as to the trial court's authority but destroys it. Worse still, he builds his argument on what is left: he quotes the truncated text, never mentions the omitted sentence, and insists the court had no power to act on its own initiative.

In short, the trial court had authority under Rule 11 and inherent authority as a court to raise the misquotation issue, to require Plaintiffs to respond, and to impose sanctions. We reject any argument to the contrary.

## C. Did Paragraph 34 of the Complaint Misrepresent the Contract?

Plaintiffs argue that paragraph 34 did not misrepresent paragraph 8(n) of the contract because the block quotation was not "intended to be a direct quote" but a "paraphrase" of the provision supporting their interpretation. Any discrepancy between the block quote and the contract, according to Plaintiffs, was merely "evidence of inartful drafting" that "does not necessarily support a finding of a material misrepresentation." Both arguments fail. The conventions of legal writing give a block quotation a specific, well-understood meaning, and paragraph 34 carried every marker of that form. The trial court correctly concluded that Plaintiffs presented paragraph 34 as a verbatim reproduction of paragraph 8(n) and, in fact, it was not.

We start with Plaintiffs' main argument: that a block quotation does not necessarily signal a word for word quotation of the source. They cite no authority for that claim. And this opinion has already shown otherwise; we have used block quotes throughout to reproduce sources verbatim, paraphrasing elsewhere with appropriate attribution and punctuation. As best we can tell, every style authority applicable to legal writing agrees on what a block quote signifies, differing only in minor details not relevant here. So we ask: what is a block quotation, and what does it represent?

### 1. *The Bluebook*

Our appellate courts generally follow the "Uniform System of Citation that is described in *The Bluebook*." The Supreme Court of North Carolina, *The Guidebook: Citation, Style, and Usage at the Supreme Court of North Carolina* 4 (3d ed. 2023)

(*The Guidebook*).  *The Bluebook* defines a block quotation in Rule 5.1: a quotation of fifty or more words, indented on both margins, single-spaced, and presented without quotation marks.  *The Bluebook: A Uniform System of Citation* R. 5.1(a)(i), at 87 (Columbia L. Rev. Ass'n et al. eds., 22d ed. 2025).  The remainder of the rule addresses how a writer may depart from the source within that form.  Alterations to the quoted text—substitutions, insertions, and changes of letters—must be marked with brackets.  *Id.* R. 5.2(a), at 88.  Omissions of words must be marked with ellipses.  *Id.* R. 5.3, at 90.  And ellipses are reserved for omissions alone: Rule 5.3 states that "[a]n ellipsis should never be used . . . when individual words are merely altered."  *Id.* Rules 5.2 and 5.3 thus presuppose that text within a block quotation is reproduced from the source unless one of these notations signals otherwise.

### 2.  *The Texas Law Review's Manual on Usage & Style* (*The Manual*)

*The Guidebook* states that "[u]nless *The Guidebook* recommends a different usage or style convention, the Supreme Court of North Carolina follows the usage and style conventions described in the Texas Law Review's Manual on Usage & Style."  *The Guidebook* at 9.  *The Manual* prescribes the same rules as *The Bluebook*. A block quotation, it instructs, is a quotation of fifty or more words, begun on a new line, indented from both margins, and presented without quotation marks.  Tex. L. Rev., *Manual on Usage & Style* § 7.06, at 66 (15th ed. 2020).  Ellipses within a quote mark "the omission of material" from the source.  *Id.* § 7.05, at 66.  And *The Manual* illustrates this by putting the source text alongside the resulting block quotation in

parallel columns, identical except where ellipses appear in place of the omitted language. *See id.* § 7.07, at 68.

### 3. *The Redbook*

*The Redbook* is a manual on legal style that *The Guidebook* recommends as a "comprehensive" supplement to *The Manual*. *The Guidebook* at 9. It is to the same effect as *The Bluebook* and *The Manual*, and it articulates the underlying premise more directly than either. *The Redbook* describes a block quotation as material introduced with a lead-in, "[s]et . . . off from the previous text, indent[ed] . . . on both sides, and single-space[d]," and presented without quotation marks. Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 1.30(d), at 26 (5th ed. 2023). Omissions within a quotation are marked with ellipses, *id.* § 1.47, and alterations are marked with brackets, *id.* § 1.43. As *The Redbook* plainly puts it: "When quoted matter is altered in any way[,] . . . legal writing requires that the change be rigorously indicated—even to the point of using brackets to show a change in capitalization." *Id.* § 1.43(a). Brackets and ellipses are not interchangeable; each marks a distinct kind of departure from the source, and each is required for the kind of departure it marks. *See id.* § 1.43(b).

### 4. *The Indigo Book: A Manual of Legal Citation* (*The Indigo Book*)

*The Indigo Book* is a public-domain manual that *The Guidebook* identifies as an able description of the same Uniform System of Citation set out in *The Bluebook*. *The Guidebook* at 4. It prescribes the same conventions for block quotations: quoted

material of fifty or more words, single-spaced, indented on both sides, and presented without quotation marks. Sprigman *et al.*, *The Indigo Book: A Manual of Legal Citation*, Public Resource R. 40 (2016). Substitutions and insertions must be bracketed, including changes to capitalization. *Id.* at R. 38. Omissions are marked with an ellipsis. *Id.* at R. 39. And like *The Bluebook*, *The Indigo Book* instructs that "[a]n ellipsis never begins a quotation." *Id.* The reason: an ellipsis at the start of a quotation would have nothing to stand in for, because no quoted text precedes it. The rule thus assumes that an ellipsis signals the omission of words from reproduced source text—and that the surrounding text comes from the source.

### 5.  Was the block quote "inartful drafting?"

These sources make clear that a block quotation in a pleading, motion, brief, or any other legal document represents the source's exact words, except for departures marked by brackets or ellipses. Again, Plaintiffs have identified no authority to the contrary. Paragraph 34 of the complaint deployed every marker of the form: it prefaced the block-quoted text with the words "which states"; it set the text off in a single-spaced, indented block without quotation marks; and it inserted ellipses within the block. As the trial court recognized, those features, separately and especially in combination, signal to any reader of a legal document that the quoted material is the source's exact language.

The trial court was also correct that the alterations within the block quote were not stray imprecision that could plausibly be called "inartful drafting." Words were

deleted from the contract, a word ("refund") was added, phrases were dropped, and the meaning of the provision was changed—all within text presented as a verbatim quotation. A paraphrase that requires deleting contract language and inserting new language to, in the trial court's words, "more closely fit the circumstances of this case," is not a paraphrase. It is a misrepresentation dressed as a quotation.

The "inartful drafting" argument is weaker still because the show cause order pointed straight at the problem and required an explanation. It told Plaintiffs, in essence, to explain the differences between the block quote in paragraph 34 of the complaint and the actual language of paragraph 8(n) of the contract. Yet attorney Griffin did not use that opening to acknowledge those clear differences, even while pressing for his own reading of the contract as a whole. Instead, he argues—*and argues still*—that a block quote does not always indicate a verbatim quotation of the source. Again, this is wrong.

Finally, Plaintiffs cite *Colonial Acceptance Corp. v. Northeastern Printcrafters, Inc.*, for the proposition that "the substance, not the label, of an agreement controls." 75 N.C. App. 177, 330 S.E.2d 76 (1985). But *Colonial Acceptance* has nothing to do with the meaning of a block quote, or with anything else in this case. There, we addressed whether the individual defendants were guarantors or sureties on a loan to the corporate defendant, and whether they could raise a usury defense under state law. *Id.* at 177–78, 330 S.E.2d at 76–77. Although the individuals had signed an agreement labeled "Guaranty," we held that their liability was that of sureties

because the agreement's operative terms made them "directly and immediately liable" for the corporate debt—and that, as sureties, they could not assert a usury defense. *Id.* at 179–80, 330 S.E.2d at 77–78.

In invoking *Colonial Acceptance*, Plaintiffs appear to argue that the verbatim words of paragraph 8(n) and the reworded block quote in paragraph 34 mean substantively the same thing. But as the trial court rightly observed, they do not: the alterations changed the meaning of the provision, and the contract's actual fee provision, paragraph 8(n), does not reach the dispute here.

Limage and attorney Griffin were always free to make a good-faith argument about their interpretation of paragraph 8(n), even a losing one. But that's not what happened. Their arguments miss the point that matters—not the rules for formatting block quotations, but an attorney's duty of candor to the tribunal. The trial court did not err in concluding that paragraph 34 of the complaint misrepresented paragraph 8(n) of the contract.

## D. Was the Misquoted Language "Immaterial" to the Issues Presented at the Hearing?

Plaintiffs argue that "evidence of inartful drafting does not necessarily support a finding of a material misrepresentation." A material misrepresentation, they maintain, must "seek[ ] to deceive or gain some unfair advantage," drawing on the Merriam-Webster online dictionary's definition of "misrepresent" as "to give a false or misleading representation of usually with an intent to deceive or be unfair."

Plaintiffs press two materiality arguments. First, they say no deception was possible because the entire contract was attached to the complaint as an exhibit, so its express terms controlled regardless of any paraphrased complaint allegation. Second, they contend that paragraph 34 and paragraph 8(n) were "of no importance to [Limage's] motions, Defendants' responses, or any issue before the court" because, by the time of the summary judgment hearing, Limage was no longer seeking attorney's fees under the contract. Neither argument persuades.

We take the attached-contract argument first. The parties used Standard Form 2-T, "Offer to Purchase and Contract," approved by the North Carolina Bar Association and the Association of Realtors for residential transactions. Paragraph 1(d) provides that Limage was to pay a building deposit *"in accordance with the attached New Construction Addendum (Standard Form 2A3-T)."* Yet the contract's addenda checklist, which directs the parties to "check all standard addenda that may be a part of this contract . . . and attach hereto," leaves the box for the "New Construction Addendum (Form 2A3-T)" unchecked. And Attorney Griffin's response confirms that this was not a mere failure to check a box. He averred that the contract referred to "Standard Form 2A3-T," but that the form "was not signed by the parties, not attached to the complaint and should not have been used unless construction of the dwelling is completed or very nearly completed or if the agreement between the buyer and seller includes the construction of significant additional improvements." So the very document governing the building deposit's payment, according the

contract, was never before the trial court—leaving the court to resolve Limage's claim for attorney's fees on a "refund" of that deposit without the addendum needed to define it.

The obscurity of paragraph 8(n) changes nothing. Plaintiffs do not dispute the trial court's finding that the provision's language *is*, in fact, "7 ¼ lines of fine print among 47 pages of attached exhibits." That the provision was buried, however, does not excuse misquoting it. Both trial and appellate judges rely on attorneys, as officers of the court, to present the facts and the law truthfully and fairly. Trial judges in particular have no law clerks or staff to comb through every word of a complaint and every page of its attached exhibits, checking each quotation against its source. At the very least, judges should be able to trust attorneys to quote a few sentences correctly from one of a complaint's many pages of attachments.

The misquote cost the trial court time. The court did eventually find the correct contractual language—and then had to spend more time figuring out why the contract was misquoted, "well in excess of 6 hours" it would not have needed had paragraph 34 quoted paragraph 8(n) correctly. Plaintiffs could also have offered their reading of paragraph 8(n) as a paraphrase, in their own words, rather than casting it as a block quote. Had they done so, the court would have understood paragraph 34 as their contention about what the provision means, not as the provision's actual text. But that is not what paragraph 34 did.

Plaintiffs' second argument fares no better. As mentioned, they claim that

paragraph 34 and paragraph 8(n) were immaterial because, at the summary judgment hearing, Limage was no longer pursuing attorney's fees under the contract.[7]  But the summary judgment motion, as the trial court's order ably explained, sought summary judgment on both claims and asked for attorney's fees on each.  The court had to be ready to rule on every issue the complaint and motions presented, and it did. The show cause order then gave Limage and attorney Griffin a chance to clear up any confusion about the request for attorney's fees and the complaint's quotation of the contract.  The court stated that, while the matter was "under advisement," it had assumed that Limage did not ask for fees under the contract at the hearing because "[he] (finally) realized that [c]ontract [paragraph] 8(n) did not provide for the attorney's fees he was seeking"—though Limage and attorney Griffin never said as much.  But attorney Griffin's response did not confirm that assumption.

And what attorney Griffin said at the hearing does not change the analysis. Rule 11, as the trial court rightly put it, "deals with the signing of documents—not oral arguments advanced at a hearing."  *See, e.g.*, *Bryson v. Sullivan*, 330 N.C. 644, 660, 412 S.E.2d 327, 335 (1992) ("[I]t is clear that Rule 11 allows sanctions for the certification of a court paper that violates the Rule and therefore only the challenged

---

[7] Plaintiffs did not withdraw their claim for attorney's fees under the contract at the summary judgment hearing, even if their argument there addressed fees only for the UDTP claim.  The breach-of-contract claim remained in the complaint, so the trial court had to rule on it, especially after granting summary judgment on that claim.

pleading itself is considered."). A statement narrowing the fee request, made orally at the hearing, does not erase what the complaint and the motion had already put before the court in writing. That is especially true here, where (again) the show cause order gave Limage and attorney Griffin a chance to explain any difference between the written fee request in the complaint and the oral one at the hearing.

Plaintiffs do not challenge the specific sanctions imposed, so we do not address them. The trial court carefully considered how to craft the sanctions here, including that Defendants were *pro se* and that they themselves violated the discovery rules. On *de novo* review, we hold the trial court did not err by imposing sanctions.

## IV. Conclusion

For the reasons explained above, we affirm the trial court's sanctions order.

AFFIRMED.

Chief Judge DILLON concurs.

Judge MURRY concurs in the result only.